IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SHAWNA E. SANCHEZ and
OLEGARIO SANCHEZ,

      Plaintiffs,

v.                                           CASE NO: 4:09-cv-00420-SPM-WCS

LARRY CAMPBELL, in his official capacity
as SHERIFF, LEON COUNTY, FLORIDA
and MORRIS YOUNG, in his official capacity
as SHERIFF, GADSDEN COUNTY, FLORIDA

      Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW AND CERTIFICATE OF COMPLIANCE

Defendants, LARRY CAMPBELL, in his official capacity as Sheriff of Leon County, and MORRIS YOUNG, in his official capacity as Sheriff of Gadsden County, move for the dismissal of Plaintiffs' Amended Complaint and in support thereof would show:

    I.     **LEGAL BASIS FOR MOTION:**

Based upon the allegations of the Plaintiffs in this case, Plaintiffs cannot establish a claim under the Sixth, Eighth, or Fourteenth Amendments to the United States Constitution, or under Florida law, in that:

    A.     In her pleading, Plaintiff SHAWNA E. SANCHEZ states she was arrested pursuant to a warrant. She does not allege that, at the time of her incarceration, she had been convicted of any crime. To the contrary, from the allegations found in Plaintiff's complaint, it is apparent that at all times pertinent to the events complained of, Plaintiff was a pretrial detainee. As such, Plaintiff possesses no Eighth Amendment claim. Moreover, the Eighth Amendment

1

does not provide rights to due process, as alleged, but protect only against cruel and unusual punishment.

B.  Plaintiff SHAWNA E. SANCHEZ cannot state a cause of action pursuant to the Sixth Amendment because Plaintiff's allegations under that Amendment relate solely to the alleged failure to inform her of her right to counsel. However, she does not allege any adverse action occurred as a result of any alleged failure to inform her of her right to counsel and violations of the right to be informed of counsel are not subject to remedy via an action for damages. Moreover, the Sixth Amendment does not provide rights to due process, as alleged, but protect only against \*\*\*.

C.  Plaintiff SHAWNA E. SANCHEZ was not deprived of her rights to due process under the Fourteenth Amendment;

D.  A sufficient legal basis existed for the continued detention of the Plaintiff SHAWNA E. SANCHEZ, rendering Plaintiff's imprisonment lawful and not false imprisonment under Florida law;

E..  Negligent enforcement of policy allegations fail to state a claim under Florida law and previous decisions of this Court;

F.  Without an underlying claim on the part of Plaintiff SHAWNA E. SANCHEZ, Plaintiff OLEGARIO SANCHEZ cannot state a claim for loss of consortium.

G.  Without viable federal claims, this Court may and should decline to exercise supplemental jurisdiction over the state law claims of the Plaintiffs, including the loss of consortium claim.

**II.** **MEMORANDUM OF LAW:**

**A.** **INTRODUCTION:**

In this case, the Plaintiff, SHAWNA E. SANCHEZ, alleges that she was arrested on August 8, 2008 after being stopped for a traffic offense. Plaintiff was arrested on an outstanding felony warrant for the crime of passing a worthless bank check. As a result, Plaintiff SHAWNA E. SANCHEZ was taken into custody and transported to the Leon County Jail. (Amended Complaint, ¶ 8) The Plaintiff alleges that she was then held until August 13, 2008, a period of five days, without being afforded a first appearance while being held at the Leon County Jail. Plaintiff SHAWNA E. SANCHEZ further alleges that the Gadsden County Sheriff's Office failed to pick her up from the Leon County Jail to transport her to Gadsden County, from where the warrant emanated. (Amended Complaint, ¶¶ 9-12). Plaintiff SHAWNA E. SANCHEZ alleges that during the time she was held at the Leon County Jail, she was not informed of her right to counsel. (Amended Complaint, ¶ 12).

Plaintiff SHAWNA E. SANCHEZ does not challenge the validity of the felony warrant upon which she was arrested, only the amount of time for which she was held without being provided a first appearance. Plaintiff SHAWNA E. SANCHEZ does not allege any physical injury as a result of the events. Finally, although Plaintiff SHAWNA E. SANCHEZ alleges she was not advised of her right to counsel, she also does not allege that she was interrogated or made any statements that served to incriminate her or impacted the charges sent forth in the warrant or traffic offense upon which she was arrested.

As a result, Plaintiff SHAWNA E. SANCHEZ brought her initial complaint tendering a claim for a due process violation under the Fourth, Fifth and Fourteenth Amendments to the Constitution against the Sheriff of Leon County and against the Sheriff of Gadsden County, in

3

their official capacities. Defendants submitted a motion to dismiss in response. In the Amended Complaint, Plaintiff modifies the claims to assert violations of the Sixth, Eighth and Fourteenth Amendments, adding only cursory allegations that do not go to the core of Plaintiff's claims or the legal basis for those claims. Plaintiff further again asserts the actions were the result of an existing policy or the failure to adopt a policy or in enforcing an improper policy or, alternately, the failure to implement adequate hiring, training, staffing and supervisory procedures, again offering only conclusory allegations. (Amended Complaint, ¶¶ 22, 23, 35 & 36). Plaintiff also asserts state law claims against both Defendants characterized as negligent enforcement of policies and false imprisonment. A loss of consortium claim is also brought by OLEGARIO SANCHEZ.

### B. COUNTS I & II: EIGHTH AMENDMENT CLAIMS (SHAWNA SANCHEZ):

In her pleading, Plaintiff SHAWNA E. SANCHEZ states she was arrested pursuant to a warrant. She does not allege that, at the time of her incarceration, she had been convicted of any crime. To the contrary from the allegations found in Plaintiff's complaint, it is apparent that at all times pertinent to the events complained of, Plaintiff was a pretrial detainee. As such, Plaintiff possesses no Eighth Amendment claim. Moreover, the Eighth Amendment does not provide rights to due process, as alleged, but protect only against cruel and unusual punishment. Claims arising under the Eighth Amendment to the United States Constitution require a showing that the plaintiff has been convicted of a crime. Bell v. Wolfish, 441 U.S. 520 (1979); Andrews v. Neer, 253 F.3d 1052 (8th Cir. 2001); Hunt v. Elkhart County Sheriff, 95 F. Supp. 2d 930 (N.D. Ind. 2000).

### C.  COUNTS I & II: SIXTH AMENDMENT CLAIMS (SHAWNA SANCHEZ):

Plaintiff SHAWNA E. SANCHEZ cannot state a cause of action pursuant to the Sixth Amendment because Plaintiff's allegations under that Amendment relate solely to the alleged failure to inform her of her right to counsel. However, she does not allege any adverse action occurred as a result of any alleged failure to inform her of her right to counsel and violations of the right to be informed of counsel are not subject to remedy via an action for damages. Moreover, the Sixth Amendment does not provide rights to due process, as alleged, but protect only against.

The Sixth Amendment to the United States Constitution provides various protections related to criminal prosecutions such as a right to a speedy and public trial, an impartial jury, to be informed of the nature and cause of the accusation, to be confronted with witnesses, compulsory process for obtaining witnesses and to have the assistance of counsel. In the instant cause, the Plaintiff's Sixth Amendment Claim appears to be based upon the right to the assistance of counsel. Plaintiff alleges that he was not advised of the right to counsel and that this failure constitutes a violation of her rights under the Sixth Amendment.

Generally the courts have held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which time the defendant is told of the formal accusations against him and restrictions are imposed on his leaving. Rothgery v. Gillespie County, Texas, 128 S.Ct. 2578 (U.S. 2008). *Also see,* Kirby v. Illinois, 92 S.Ct. 1877 (U.S. 1972). However, the cases addressing this issue appear to relate to actual appointment of counsel, as opposed to being told of the right to counsel. In the instant case, Plaintiff has not alleged that she ever requested the appointment of counsel or was at any time during her incarceration at the Leon County Jail denied the right to counsel after requesting same. The prerequisite to claim a Sixth Amendment right is that it must be invoked by the

5

person claiming it. Chewning v. Rogerson, 29 F. 3d 418 (8th Cir. 1994). Nor does Plaintiff allege that she was questioned, interrogated or otherwise communicated with regarding any of the charges that had resulted in her being brought to jail. Defendant has not located any case law that speaks to a Sixth Amendment violation in the context of the simple failure to advise someone of their right to counsel. To the contrary, the case law indicates that the failure to provide Miranda Warnings, which include being advised of the right to counsel, would not create a violation of the law that is actionable for damages. *See also,* Purvis v. City of Orlando, 273 F. Supp. 2d 1321 (N.D. Fla. 2003) at 1325.

To the extent Plaintiff is alleging a due process violation in connection with the failure to provide *Miranda* warnings, law enforcement officers are not liable under § 1983 for failure to properly give Miranda warnings to an arrestee. Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999); Bennett v. Passic, 545 F. 2d 1260 (10th Cir. 1976). If the failure to provide warnings against self incrimination prior to questioning is not actionable in a claim for damages, then the mere failure to advise of the right to counsel over a five day period without consequence is no more actionable.

### D. COUNTS I & II: FOURTEENTH AMENDMENT DUE PROCESS (SHAWNA SANCHEZ):

In Baker v. McCollan, 443 U.S. 137 (1979), the Supreme Court addressed the question of the due process rights of an individual arrested pursuant to a warrant and detained in jail. In addressing the constitutionality of the detention in that case, the court first recognized that the Fourth Amendment requires the states to provide a fair and reliable determination of probable cause as a condition for any significant pre-trial restraint of liberty and that this probable cause determination must be made by a judicial officer either before or promptly after the arrest. However, as it pertains to arrests made pursuant to a warrant, the Court held that a person so

arrested was not constitutionally entitled to a separate judicial determination of probable cause in order to detain that person pending trial. As a result, in Baker v. McCollan, as here, there was no suggestion that the arrest was constitutionally deficient; instead, the claim was based solely upon the actions or omissions occurring after the arrest.

In addressing Plaintiff's claim and the context of his post arrest detention, the Court in Baker v. McCollan stated: "Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution." In so holding the Court recognized that someone in the position of the plaintiff in that case could not be detained indefinitely even if the warrant met the standards of the Fourth Amendment and that the lapse of a certain amount of time would deprive the accused of liberty without due process of law. Even so, the Court determined that a detention of three days does not and could not amount to such a deprivation. 443 U.S. at 144-145. The Court's conclusion in Baker v. McCollan was based upon the rationale that "The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivation of liberty accomplished 'without due process of law.' " *Id.* at 145. The Court went on to state that §1983 imposes liability for violations of rights protected by the Constitution, but not the violations of duties of care arising out of tort law. In other words, false imprisonment does not become a violation of the Fourteenth Amendment simply because the defendant is a state official. *Id.* at 146. The Court in Baker v. McCollan did not state at what point in time or how many days must pass before a due process violation becomes viable.

In applying Baker v. McCollan, the district and circuit courts have addressed a variety of circumstances involving arrests pursuant to warrants for criminal offenses and for civil offenses. The district and circuit courts have applied Baker v. McCollan to a variety of time frames, also

7

not setting forth a specific point in time when the continued detention becomes of constitutional magnitude. The courts have addressed time frames from as short as 24 hours to as long as fifty seven days. There appears to be little case law from the Eleventh Circuit addressing this issue. However, as a general proposition, the shorter the time of detention the less likely the courts have been to find a due process violation. For example:

In Afeworki v. Thompson, 2007 W.L. 2572293 (W.D. Wash. 2007), the plaintiff was arrested on a variety of charges, including those emanating from three outstanding warrants. The plaintiff asserted his constitutional rights were violated because he was held in jail for seventeen days following his arrest without a preliminary appearance before a judge. The plaintiff had been detained eleven days after his arrest before he was provided a hearing related to community custody violations for which he was also subject to confinement and then another six days passed before he was provided a preliminary appearance. In Afeworki the court concluded that although it could not condone the seventeen day delay between the arrest and the first appearance, the delay did not serve to shock the conscience of the court and was not offensive to the concept of an ordered liberty.[1]

---

[1] In Jackson v. Hamm, 78 F. Supp. 2d 1233 (M.D. Ala. 1999), the court addressed the claim of the plaintiff who was arrested pursuant to numerous warrants and detained for a period of twenty-eight days without the benefit of an appearance bond or initial appearance before a magistrate or judge. Similar to Florida, the State of Alabama has enacted rules of criminal procedure that require a person arrested pursuant to a warrant, who cannot meet the conditions of release or for whom no conditions or release are prescribed, shall be taken without undue delay, but in no event later than seventy-two hours after arrest, before a judge or magistrate. As in the instant case, Plaintiff Jackson asserted a violation of his rights under the Fourth and Fourteenth Amendments. In resolving the case in favor of the defendant, the court first rejected Plaintiff's Fourth Amended claim because his arrest was pursuant to a valid warrant that was not challenged. In then addressing the due process claims of the plaintiff, the court rejected the proposition that the plaintiff's due process claim could be premised upon an alleged violation of the Alabama Rules of Criminal Procedure because substantive due process rights are created only by the Constitution, citing to McKinney v. Pate, 20 F. 3d 1550 (11th Cir. 1994). After providing an extensive discussion of the case law pertaining to such claims, the Jackson court concluded that a pretrial detainee has a substantive due process right to an initial appearance within a reasonable time after arrest upon a valid warrant. However, the Jackson court did not determine what constituted "a reasonable time" and ultimately resolved the claim on principles of qualified immunity. The Jackson court rejected its Plaintiff's claim for violation of procedural due process, concluding that Alabama law relating to initial appearance hearings did not create a property right sufficient to violate a liberty interest when due process was not provided.

In <u>Pledger v. Reece</u>, 2005 W.L. 3783428 (W.D. Ark. 2005), the court found no due process violation sufficiently shocking to the conscience where the plaintiff had been arrested on February 16, 2004 without a warrant and held until March 2, 2004, without being provided court hearing. In that case, the general policy of the jail required the inmates to be brought before a judicial officer within seventh-two hours and that a judicial determination of probable cause be made within forty-eight hours. The court found that the <u>fourteen day</u> delay in the release of the plaintiff did not create a due process violation.

In <u>Green v. Sheahan</u>, 1998 W.L. 901681 (N.D. Ill. 1998), the plaintiff was arrested on August 1, 1997 and granted bond on the same date. However, the plaintiff was transferred from the custody of one jail to another and ultimately was not released until August 12, 1997, having spent <u>eleven days</u> in jail. As a result, plaintiff sought damages asserting, as here, the violation of his Fourth, Fifth and Fourteenth Amendment rights. Defendants moved for dismissal. In granting dismissal, the court concluded that the allegations provided by the plaintiff in the complaint were insufficient to state a cause of action.

In <u>Lara v. Stohry</u>, 2005 W.L. 2886076 (S.D. Ind. 2005), the plaintiff was arrested on September 20, 2002, on an outstanding bench warrant for the failure to appear. Plaintiff was transported to the Marion County Jail where he was held until being transferred to the custody of the Shelby County Sheriff on October 1, 2002. On that date, plaintiff went before a Shelby County judge for his release. The plaintiff's due process claim challenging his detention followed. In granting summary judgment to the defendant in that case, the court recognized the unfortunate nature of the plaintiff's detention, but concluded that the <u>ten day</u> period of time for which the plaintiff was held on the warrant did not shock the conscience of the court.

In <u>Patton v. Przybylski</u>, 1986 W.L. 6088 (N.D. Ill. 1986), the plaintiff brought a claim asserting that he had been held for <u>eight days</u> after his arrest on a valid warrant, despite his protestations of innocence and mistaken identity. After extensively citing to the facts set forth in the Supreme Court decision of <u>Baker v. McCollan</u>, the court concluded that the detention in the <u>Baker v. McCollan</u> was actually closer to eight days in length than to the three days referred to in the Court's opinion and that the eight day length of time which the plaintiff in <u>Patton</u> was held on a facially valid warrant did not serve to violate the due process clause.

In <u>Panfil v. City of Chicago</u>, 45 Fed. Appx. 528 (7th Cir. 2002), the plaintiff was mistakenly arrested on December 24, 1999, pursuant to a warrant. He was held in the Cook County Jail, then transferred to the McHenry County Jail and ultimately released on December 30, 1999, when it was determined the arrest was a result of misidentification. In analyzing the claim, the court first rejected the application of a Fourth Amendment analysis since the arrest on a facially valid warrant based on probable cause did not violate the Fourth Amendment. The court then analyzed the plaintiff's claim under the Fourteenth Amendment principles set forth in <u>Baker v. McCollan</u>, *supra*. The court concluded that the plaintiff in that case did not suffer a constitutional deprivation despite his confinement for only <u>four days</u>, which was fewer than any of the time periods in other case law. See also, <u>London v. Dorney</u>, 2009 W.L. 903392 (W.D. Ark. 2009) (<u>three day</u> delay in obtaining a first appearance hearing for the plaintiff was not shocking to the court's conscience and dismissed Plaintiff's due process claim).

In <u>Hunt v. Elkhart County Sheriff</u>, 95 F. Supp. 2d 930 (N.D. Ind. 2000), the court extensively reviewed the case law of the Second Circuit in evaluating the due process claim of Reverend Lord M. Hunt who was arrested on a body attachment warrant for contempt. In circumstances similar to those existing in the instant case, Plaintiff Hunt was taken into custody

10

on a warrant and transported to the Tipton County Jail. The Tipton County Sheriff then contacted the Elkhart County Sheriff and was told not to release Plaintiff Hunt, but instead instructed that he be held until the Elkhart Sheriff could send personnel to pick him up. Plaintiff Hunt was confined for a period of approximately two days. After first determining that the Fourth and Eighth Amendments to the United States Constitution did not provide the basis for the claim under §1983, the court applied a Fourteenth Amendment due process analysis. Conducting the analysis, the Hunt court noted that the plaintiff was required to present facts to establish that the defendants "intentionally and recklessly" deprived him of a constitutional right under the totality of the circumstances. *Id.* at 935. In other words, the court stated that the conduct must constitute a denial of fundamental fairness or be shocking to the universal sense of justice. *Id.*

While conducting its analysis, the Hunt court recognized the difficulty in determining what constitutes a "brief time" and appeared to recognize that a period of time in excess of the three days referenced in Baker v. McCollan would likely be required for a due process violation to exist. After measuring that the detention against the "hazy, often inexact yardstick of substantive due process" the court concluded that Reverend Hunt's claim did not measure up to a constitutional violation. The court determined that the totality of the circumstances did not shock the conscience of the court and any deliberate indifference engaged in by the Elkhart County Sheriff related to a deliberate indifference to a statutory right, not to a safety or serious medical need that would render such a claim actionable. *Id.* at 938.

In Almeida v. Sheahan, 1998 W.L. 781109 (N.D. Ill. 1998), the court addressed a two day detention of an individual arrested on a warrant in a situation that ultimately turned out to be a mistaken identity arrest. As a preliminary matter, the court noted that when the alleged

11

unconstitutional detention occurs after an arrest pursuant to a warrant, the complaint is measured by the Due Process Clause of the Fourteenth Amendment, not the Fourth Amendment. Applying Baker v. McCollan, the Almeida court found no constitutional violation to result from the two day detention. See also, Jacobson v. Mott, 2009 W.L. 113379 (D.Minn. 2009) (a two day detention before providing a first appearance hearing was not shocking to the conscience or in violation of the Plaintiff's due process rights); Luckeys v. County of Hennepin, 415 F. 2d 936 (8th Cir. 2005) (no due process violation when plaintiff was held for twenty-four hours following his arrest for an outstanding bench warrant). But see, Hayes v. Faulkner County, 388 F. 3d 669 (8th Cir. 2004) (thirty eight day delay before providing a first appearance hearing); Coleman v. Frantz, 754 F. 2d 719 (7th Cir. 1984) (eighteen day detention violates due process); Armstrong v. Squadrito, 152 F. 3d 564 (7th Cir. 1998) (fifty seven day detention on civil "body attachment warrant").

As the above referenced discussion reveals, there is no clear amount of time that the courts have set at which time a continued detention serves to violate the Due Process Clause. However, it is clear that the shorter the time the less likely it is that the conduct complained of will be deemed shocking to the conscience of the court. Defendants would suggest that in this case the time of detention, five days, tends more toward the Baker v. McCollum holding of three days, than the other cases where violations have been found to have occurred as a result of extended periods of detention. As a result, the continued detention of the Plaintiff SHAWNA SANCHEZ for a period of five days does not serve to shock the conscience or to violate the Due Process Clause of the Fourteenth Amendment. Plaintiff's Amended Complaint does not offer any new or sufficient allegations to overcome this body of law and the Plaintiff's bold and

presumptuous conclusion that the conduct "shocks the conscience of the court" is insufficient to overcome the case law cited to above. (Amended Complaint, ¶¶ 25 & 38).[2]

### D. COUNTS III & IV: STATE LAW NEGLIGENT ENFORCEMENT OF POLICIES (SHAWNA SANCHEZ):

For Plaintiff to have an actionable negligence claim against a government entity there must be a common law or statutory duty regarding the alleged negligent conduct. See, Hinckley v. Palm Beach County Bd. of Comm'rs, 801 So. 2d 193, 194-95 (Fla. 4th DCA 2001). Plaintiff alleges a duty to enforce existing policies as the basis for that duty and adds a duty to enforce existing Constitutional provisions, statutes, or rules of criminal procedure. Plaintiff does not allege a violation of or a failure to enforce any Florida Statute as a basis for the creation of the duty of care. As such, to the extent Counts III and IV attempt to allege a duty of care premised upon the failure to enforce the Sheriff's internal policies and procedures a reading of the decision of the Florida Supreme Court that has definitively determined the issue of the extent to which internal policies or procedures of a governmental agency create duty of care. In Pollock v. Florida Department of Highway Patrol, 882 So.2d 928 (Fla. 2004), the Florida Supreme Court concluded that although a statute may create a duty of care, no similar duty of care is created by the internal policies of a governmental agency. The court stated at pages 937 - 938:

> We further conclude that FHP's internal operating procedures and policies did not impose a duty to dispatch officers to the scene of the stalled tractor-trailer. On this issue, we approve the reasoned analysis of the district court which concludes that, in the context of governmental tort litigation, written agency protocols, procedures, and manuals do not create an independent duty of care. See *Pollack, 745 So. 2d at 450*. While a written policy or manual may be instructive in determining whether the alleged tortfeasor acted negligently in fulfilling an independently established duty of care, it does not itself establish

---

[2] To the extent Plaintiff seeks to impose liability as a result of any alleged failure to comply with the Florida Constitution, Florida law or the Florida Rules of Criminal Procedure, violations of that nature do not provide the basis for a cause of action under § 1983. Knight v. Jacobson. 300 F.3d 1272, 1275 – 76 (11th Cir. 2002); Rector v. City and County of Denver, 348 F.3d 935, 947 (10th Cir. 2003); Wilson v. Meeks, 52 F.3d 1547 (10th Cir. 1995); Romero v. Bd. of Co. Comm'r, 60 F.3d 702 (10th Cir. 1995).

such a legal duty vis-à-vis individual members of the public. *Accord, Alderman, 493 So. 2d at 497-98* (holding that FHP regulation requiring officers to report damaged road signs did not impose a duty to report damaged signs, repair them, or warn motorists of the potential dangers); see also *Mayo v. Publix Super Markets, Inc., 686 So. 2d 801, 802 (Fla. 4th DCA 1997)* (holding that a company's internal safety policies may serve as evidence relevant to standard of care but do not themselves establish that standard); *Gunlock v. Gill Hotels Co., Inc., 622 So. 2d 163, 164 (Fla 4th DCA 1993)* (same with regard to company policy); *Metro. Dade County v. Zapata, 601 So. 2d 239, 243-44 (Fla. 3d DCA 1992)* (same with regard to rules governing conduct of county lifeguards). This principle applies, unless, of course, the sovereign adopts such protocols and procedures as standards of conduct, in which case there would exist an independent duty of care. See *City of Jacksonville v. DeRay, 418 So. 2d 1035, 1036-37 (Fla. 1st DCA 1982)* (affirming final judgment against the City for its failure to follow the protocols provided for in the traffic control devices manual which the City had adopted as the standard for signalization and street markings); *State Dep't of Transp. v. Cooper, 408 So. 2d 781 (Fla. 2d DCA 1982)* (same).

The Florida court could not have issued a more direct and definitive statement of the law on this issue. This decision of the Florida Supreme Court clearly and definitively bars Plaintiff's negligence claims in Counts III and IV to the extent that claim is premised upon a duty of care created by internal policies and procedures of the Defendant Sheriffs. This Court has recently so held in dismissing similar claims in Vaden v. Campbell, Case No. 4:09cv12-RH/WCS (N.D.Fla., 07/02/2009: Doc. 34)

Similarly, to the extent Plaintiff seeks to impose liability as a result of any alleged failure to comply with the Florida Constitution, Florida law or the Florida Rules of Criminal Procedure, violations to that nature do not provide the basis for a cause of action for damages. Fernez v. Calabrese, 760 So .2d 1144 (Fla. 5th DCA 2000; Garcia v. Reyes, 697 So.2d 549 (Fla. 4th DCA 1997); Tucker v. Resha, 634 So.2d 756 (Fla. 1st DCA 1994). Although Plaintiff attempts to bootstrap the alleged violations of these provisions of the Constitutions, statutes or rules of procedure on to a negligence action, these claims fail.

E.  **COUNTS V & VI: STATE LAW FALSE IMPRISONMENT (SHAWNA SANCHEZ):**

The elements of a cause of action for false imprisonment include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or color of authority; and (4) which is unreasonable and not warranted under the circumstances. Monthao v. Martin Memorial Medical Center, Inc., 935 So. 2d 1266 (Fla. 4th DCA 2006). While complying with a facially valid court order, the law enforcement officer enforcing the order is entitled to immunity. Martin v. Hendren, 127 F. 2d 720 (8th Cir. 1997); Johnson v. Heinrich, 543 So. 2d 831 (Fla. 2d DCA 1989). Where an arrest (or imprisonment) is pursuant to lawful authority, it cannot serve as a basis for a claim of false imprisonment. Jackson v. Navarro, 665 So. 2d 340 (Fla. 4th DCA 1995).

In Card v. Miami Dade County, Florida, 147 F. Supp. 2d 1334 (S.D. Fla. 2001), the court addressed a similar claim involving an individual who asserted that his imprisonment became unlawful after his arrest when he should have been released. The plaintiff there asserted that he remained in jail for twenty seven days while awaiting a court ordered psychological evaluation that never occurred. In granting summary judgment the court recognized that false imprisonment is detention without color of legal authority and occurs when there is an improper restraint which is not the result of a judicial proceeding. However, since the detention of the plaintiff in that case was made with probable cause and the continued detention was pursuant to a facially valid court order, there was no false imprisonment under Florida law. The identical circumstances exist in this case where the judicially issued warrant establishes the probable cause for the detention and absent any directive from the court ordering the release of the Plaintiff, the continued detention remained lawful.

F.  **CONSORTIUM CLAIM (COUNT VII) (OLEGARIO SANCHEZ):**

The dismissal of the underlying state law claims of Plaintiff Shawna Sanchez, necessarily results in the dismissal of the loss of consortium claims of Olegario Sanchez.

G.  **SUPPLEMENTAL JURISDICTION (STATE LAW CLAIMS):**

A federal court's supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary and may be declined if the district court has dismissed claims over which it has original jurisdiction. Such a disposition is generally encouraged. L.A. Draper and Son v. Wheelabrator-Frye, Inc., 735 F.2d 414 (11th Cir. 1984); Ogletree v. Columbia County, 34 F.Supp.2d 1349, 1364 (M.D.Fla.1997). Pursuant to 28 U.S.C. § 1367(c), the district courts may decline to exercise supplemental jurisdiction over a state claim if the claim raises a novel or complex issue of State law; the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; the district court has dismissed all claims over which it has original jurisdiction, or in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In this case, should Plaintiff's federal claims be dismissed, the premise for this Court's jurisdiction would evaporate and Plaintiff's state law claim for negligence would be properly dismissed. Interests of judicial economy and the avoidance of federal courts determining issues of state law warrant the dismissal of Plaintiff's state law claims as to the Defendants. Bonovich v. Knights of Columbus, 963 F.Supp. 143 (D.Conn.1997), *affirmed* 146 F.3d 57. Where the plaintiff will not be prejudiced by the refusal to exercise jurisdiction and the state law claims do not involve issues of federal policy, jurisdiction is properly declined. Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Securities, Inc., 823 F.Supp. 1191 (E.D.Pa.1993); Winn v. North American Philips Corp., 826 F.Supp. 1424 (S.D.Fla.1993); Milwaukee

Professional Fire Fighters Ass'n, Local 215, IAFF, AFL-CIO v. City of Milwaukee, 869 F.Supp. 633 (E.D.Wis.1994).

Respectfully submitted this 8th day of December 2009.

*/s/ KEITH C. TISCHLER*
KEITH C. TISCHLER
Fla. Bar No. 0334081
JOLLY & PETERSON, P.A.
Post Office Box 37400
Tallahassee, Florida 32315
Tel: (850) 422-0282
Fax: (850) 422-1913

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to by CM/ECF Service only to Marie Mattox, 310 East Bradford Road, Tallahassee, Florida 32303 this 8th day of December 2009.

*/s/ KEITH C. TISCHLER*