# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

SHAWNA E. SANCHEZ and                    CASE NO.  4:09-cv-00420-SPM-WCS
OLEGARIO SANCHEZ,

      **Plaintiffs,**

vs.

LARRY CAMPBELL, in his official
capacity as SHERIFF, LEON
COUNTY, FLORIDA, and
MORRIS YOUNG, in his official
capacity as SHERIFF, GADSDEN
COUNTY, FLORIDA

      **Defendant.**

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'  MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs, SHAWNA E. SANCHEZ and OLEGARIO SANCHEZ, through their counsel, hereby files this their Response in Opposition to Defendants' Motion  to Dismiss Amended Complaint and states:

### I.  STANDARD FOR CONSIDERING MOTION TO DISMISS

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Erickson v. Pardus, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).  "[F]actual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged" must be pled.

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  Plaintiff has satisfied her burden.

## II.  COUNTS I & II : EIGHTH AMENDMENT CLAIMS (SHAWNA SANCHEZ)

Plaintiff has properly brought a claim under the Eighth Amendment for the denial of bail.

Defendants state that the Eighth Amendment does not provide rights to due process, but only

protects against cruel and unusual punishment. [Defendant's Motion, page 4].  This is inaccurate.

There is authority for the proposition that the excessive bail provision of the Eighth

Amendment is applicable to the states pursuant to the due process clause of the Fourteenth

Amendment.  Sistrunk v, Lyons, 646 F.2d  64 (3d Cir. 1981).  The United States Supreme Court

has also held that there is a "fundamental" right to bail under the Eighth Amendment. Stack v.

Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) concerned the excessiveness of certain bail

orders under review, but the court recognized a "traditional right to freedom before conviction

[which] permits the unhampered preparation of a defense, and serves to prevent the infliction of

punishment prior to conviction."Id. at 4, 72 S.Ct. at 3. The Stack Court stated that "[u]nless this

right to bail before trial is preserved, the presumption of innocence, secured only after centuries

of struggle, would lose its meaning." Id. at 4.[1]

The Plaintiff in the instant case was not provided with notice of entitlement to bail.  Stack

supports a finding that this is an Eight Amendment violation.

---

[1]    The Court in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447
(1979), diluted somewhat the Stack dicta, stating that the presumption of innocence has "no
application to determination of the rights of a pretrial detainee...." Bell v. Wolfish, 441 U.S. at
533, 99 S.Ct. at 1870

Bail should only be denied for the strongest of reasons. <u>Truong Dinh Hung v. United States</u>, 439 U.S. 1326, 1329, 99 S.Ct. 16, 58 L.Ed.2d 33 (1978).   The right to bail is "a fundament of liberty underpinning our criminal proceedings", <u>Sistrunk</u>, 646 F.2d at 70, and an essential guardian of the presumption of innocence. <u>Stack</u>, 342 U.S. at 4, 72 S.Ct. at 3.  "To deny bail to an accused otherwise entitled thereto is a deprivation of constitutional rights and due process of law. " <u>Nix v. McCallister</u>, 202 So.2d 1, (Fla. 1ˢᵗ DCA 1967).

"Almost every element of a 'first appearance' under state statutes or the Federal Rules of Criminal Procedure serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent." <u>Coleman v. Frantz</u>, 754 F.2d 719, 724 (7ᵗʰ Cir. 1985).  Among the list of traditional components of a first appearance and the rights enforced by them is to set or review bail implicating the Eighth Amendment's "excessive bail shall not be required" mandate. <u>Id.</u>  "An extended detention before a first appearance, whether or not there has been a valid determination of probable cause, substantially impinges upon and threatens [rights under the Eighth Amendment]." <u>Id.</u>

The fact that Plaintiff was denied first appearance, despite the fact that she repeatedly brought this to the attention of booking officers, constitutes the denial of bail.  "The significant benefit resulting from the interposition of a neutral judicial officer into the post-arrest detention situation with regard to the protection of these rights [one of which is to have bail set or reviewed] cannot be ignored . . . the ultimate effect of the omission [to provide for a first appearance] here must be deemed a denial of due process." <u>Id.</u>

### III.  COUNTS I & II: SIXTH AMENDMENT CLAIMS (SHAWNA SANCHEZ)

Plaintiff has also stated a cause of action for the right to counsel under the Sixth

Amendment.   The Due Process Clause of the Fourteenth Amendment forbids extended

detention, without a first appearance, following an arrest by a warrant.  Hayes v. Faulkner

County, Ark., 388 F.3d 669, 673 (8th Cir. 2004).  In addition to the Eighth Amendment

protections, the list of traditional components of a first appearance and the rights enforced by

them is the Sixth Amendment right to counsel.  Coleman, 754 F. 2d at 724.

The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall

enjoy the right to ... have the Assistance of Counsel for his defense." See U.S. Const. amend. VI.

"Assistance" is not limited to the formal trial itself.  United States v. Ash, 413 U.S. 300, 309-10,

93 S.Ct. 2568, 2573-74, 37 L.Ed.2d 619 (1973); see also Maine v. Moulton, 474 U.S. 159, 170,

106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985)("to deprive a person of counsel during the period

prior to trial may be more damaging than denial of counsel during the trial itself").  The courts

have therefore interpreted the Sixth Amendment guarantee of assistance of counsel as becoming

vested as of "the initiation of criminal proceedings-whether by way of formal charge, preliminary

hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct.

1877, 1882, 32 L.Ed.2d 411 (1972)(plurality opinion); Texas v. Cobb, 532 U.S. 162, 167-68, 121

S. Ct. 1335, 149 L. Ed. 2d 321 (2001)(Sixth Amendment right to counsel attaches "at or after the

initiation of adversary judicial criminal proceedings- whether by way of formal charge,

preliminary hearing, indictment, information or arraignment.")

In Armstrong v. Squadrito, 152 F.3d 564, 573 (7th Cir. 1998), the court recognized the

importance of first appearance to inform the accused of his/her rights under the Sixth

Amendment to be informed of the nature and cause of the accusation and of the right to counsel

and to determine if the defendant is indigent and desires the assistance of appointed counsel.  Id.

at 572-73.  As the court in Coleman noted, an extended detention without a first appearance

"substantially impinges upon and threatens all of these rights", referring to the Fifth, Sixth and

Eight Amendments.  Coleman, 754 F. 2d at 572-73.

Defendants cite to Chewning v. Rogerson, 29 F. 3d 418 (8th Cir. 1994), for the

proposition that the Sixth Amendment is not self-executing but must be invoked by the person

claiming it.  Chewning is distinguishable in that it involved law enforcement talking to the

defendant and incriminating statements being made during the interviews.  The issue was

whether the prior and limited representation by the public defender's office on certain charges

extended his Sixth Amendment protections to a murder charge for which the public defender's

office did not provide representation.  Id. at 420-21.  The Sixth Amendment right impinged in

Chewning was whether the suspect waived the right to counsel on the murder charge.  Id.

Purvis v. City of Orlando, 273 F. Supp.2d 1321, 1325 (N.D. Fla. 2003), Jones v. Cannon,

174 f.3d 1271 (11th Cir. 1999) and Bennett v. Passie, 545 F.2d 1260 (10t Cir. 1976), also cited by

the Defendants, are likewise inapposite to the instant case.  In Bennett, there was no claim that

counsel was denied.  Id. at 1264.  The plaintiff in Bennett had been thrown into a drunk tank for

12 hours and his primary constitutional claim, although it is not entirely clear from the court's

opinion, was that he was questioned in violation of his Fifth Amendment rights.

In Purvis, 273 F. Supp. 2d at 1325, the court found that the plaintiff had not asserted a

Sixth Amendment claim and analyzed his claims under the Fourteenth Amendment because no

formal charges were brought at the time he claimed his rights were violated.  The Sixth

Amendment provided no protection for the plaintiff because none of the proceedings identified in Texas v. Cobb had yet occurred.  Id..  Jones v. Cannon is also distinguishable in that the issue was an alleged Fifth Amendment violation and the failure to give Miranda warnings.  Sanchez has not alleged nor pled a violation in connection with the failure to provide Miranda warnings.

By failing to provide a first appearance, Plaintiff was deprived of notice of her right to counsel.  That right attached when she was formally charged and detained.

## IV. COUNTS I & II: FOURTEENTH AMENDMENT DUE PROCESS (SHAWNA SANCHEZ)

Plaintiff's five day detention without an initial appearance before a judicial officer violated her Sixth, Eighth and Fourteenth Amendment rights as enforced through 42 U.S.C. §1983. "To sustain a claim under § 1983, a plaintiff must allege facts showing that the 'conduct complained of was committed by a person;' that the person was 'acting under color of state law'; and that 'this conduct deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." Jackson v. Hamm, 78 F. Supp.2d 1233, 1238 (M.D. Ala. 1999) quoting Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).  The first two requirements, that Defendants are persons who acted under the color of state law, are not in dispute.  The issue raised by Defendants is whether Plaintiff Sanchez was deprived of a constitutional right.  She was denied protections under the Fourteenth Amendment.

Extended pre-trial confinement upon arrest with a warrant without the benefit of an initial appearance constitutes a violation of the Constitution.  Jackson, 78 F. Supp. 2d at 1239.  The court in Coleman, 754 F.2d at 723, held that an eighteen-day detention without an initial appearance was a deprivation of liberty without due process of law.  "The protracted

incarceration of Mr. Coleman with its incident harms is constitutionally impermissible because it is wholly inconsistent with notions of 'fundamental fairness' required of criminal prosecutions under the Due Process Clause and with the concept of 'ordered liberty.'"  Id. (quoting California v. Trombetta, 467 U.S. 479, 104 S. Ct. 2528, 2532, 81 L.Ed.2d 413 (1984); see also Cannon v. Macon County, 1 F.3d 1558, 1563 (11th Cir. 1993)(recognizing the Constitutional right to "be free from continued detention after it was or should have been known that the detainee was entitled to release".).  The court in Coleman, citing Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), held that "[t]he consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships."  754 F. 2d at 723.

In the instant case, Sanchez's family relationships were placed in peril because she "missed her child's eleventh birthday while in jail." [Amended Complaint, ¶ 14].   Her family relationships were further placed in peril because of the interruption of her source of income as her husband "a framing contractor, was forced to miss out on getting a six-month long, lucrative job due to having to care for their children while Plaintiff remained in jail.  Plaintiff thus also suffered economically due to her husband being out of work." [Amended Complaint, ¶ 14].

Discussing the importance of first appearance, the court in Coleman stated

"Almost every element of a 'first appearance' under state statues or the Federal Rules of Criminal Procedure serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent.  The following is a listing of traditional components of a first appearance . . . and the rights enforced by them: (1) inform the suspect of the charge-Sixth Amendment ("the accused shall enjoy the right * * * to be informed of the nature and the cause of the accusation"); (2) inform the defendant of the right to counsel and determine if the defendant is indigent and desires the assistance of appointed counsel Sixth Amendment ("the accused shall enjoy the right * * * to have the Assistance of Counsel for his

defense...(4) set or review bail-Eight Amendment ("Excessive bail shall not be required"). The significant benefit resulting from the interposition of a neutral judicial officer into the post-arrest detention situation with regard to the protection of these rights cannot be ignored.  Although the absence of a first appearance here may not have caused a specific violation of any one of these rights as they have been interpreted by the Supreme Court, the ultimate effect of the omission here must be deemed a denial of due process.  The tremendous burden placed on a presumptively innocent person by this type of prolonged detention cannot be permitted without more regard for that person's basic rights under the Constitution.

Id. at 724 (internal citations omitted).

The absence of a timely first appearance runs counter to the Constitution under the Fourteenth Amendment.  Coleman, 754 F.2d at 725 ("While the absence of a timely first appearance may not be the basis for the exclusion of evidence, its absence here for eighteen days surely runs counter to the Constitution under the Fourteenth Amendment".)

Plaintiff agrees that "[t]here is no clear amount of time that the courts have set at which time a continued detention serves to violate the Due Process Clause." [Defendants' Motion, pg. 12]; see also Coleman, 754 F.2d at 725 ("To specify after what period of time a given detention not accompanied by a first appearance becomes constitutionally infirm, or to outline which of the various elements of a first appearance are minimally necessary to satisfy the due process requirement would amount to inappropriate judicial legislation.")   However, this Court may determine the reasonableness of the delay in the instant case by taking into consideration the totality of the circumstances.  See  Hayes v. Faulkner County, 388 F.3d 669, 675 (8th Cir. 2004).

In considering the totality of the circumstances, Plaintiff cites to Rule 3.130(a), Florida Rule of Criminal Procedure, entitled "First Appearance."  The Rule requires that, "every arrested person *shall* be taken before a judicial officer. . .within 24 hours of arrest."  (Emphasis added).  This rule is mandatory and is designed to protect "basic and fundamental rights which our state

8

and *federal constitutions* secure to every arrestee." See Id.[2]  Here, Plaintiff was never taken

before a judicial officer within the time period mandated by this Rule.  She was arrested on a

worthless check charge, a relatively minor infraction and suffered great harm by her arrest.

In Patton v. Przybylski, 822 F. 2d 697, 701 (7th Cir. 1987), the court stated that an arrest

on a warrant, over protests of innocence, followed by a week-long detention without

investigation or an appearance before a magistrate, could make out a claim "under the due

process clause if the arrest was proper and the complaint is that the arrested person, having been

deprived of his liberty by being incarcerated, was denied due process."[3]   Similarly, in Brown v.

Patterson, 823 F. 2d 167, 169 (7th Cir. 1987), the court explained that the prolonged detention of

an arrestee without a hearing to determine if he was the person named in the warrant would be a

deprivation of liberty without due process of law and thus violate the Fourteenth Amendment.

The same point was argued in Garcia v. City of Chicago, 24 F. 3d 966, 972-74 (7th Cir. 1994),

where Judge Cudahy expressed concern that a finding of probable cause did not "bestow[ ] a

constitutional blessing on all subsequent prolonged detention."

---

[2]      Plaintiff brings this Rule to the Court's attention as one factor to consider in the totality of the circumstances, see Hayes v. Faulkner County, 388 F. 3d 669 (8th Cir. 2004), while recognizing that a violation of a state law by a governmental actor does not necessarily convert subsequent resulting harm into a due-process violation.  Jackson. 78 F. Supp. 2d at 1239; see also McKinney v. Pate, 20 F. 3d 1550, 1556 ("areas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause because 'substantive-due-process rights are created only by the Constitution'".)

[3]      Defendants cite to the lower court case, Patton v. Przybylski, 1986 WL 6088 (N.D. 1986)[Defendants' Motion, pg. 10], which was affirmed on appeal.  On appeal, however, the court set forth circumstances in which a Constitutional claim could be brought by the plaintiff.  Patton, 822 F. 2d at 701.

In <u>Johnson v. City of Chicago</u>, 711 F. Supp. 1465, 1470 (N.D. Ill. 1989), the court found that a "prolonged detention, coupled with the failure to investigate, may suggest a deprivation of liberty without due process." In <u>Johnson</u>, the court found that six days of mistaken incarceration was a sufficient lapse of time to implicate the Fourteenth Amendment. <u>Id.</u> at 1470.

The court in <u>Griffin v. Sheahan</u>, 1999 WL 342400 (N.D. Ill. 1999) found a five day detention sufficient to constitute a deprivation of liberty under the Due Process Clause. The court cited <u>Baker v. McCollan</u>, 443 U.S. 137 (1979), where the Court held that the plaintiff's due process rights were not violated when he was arrested pursuant to a warrant and detained in jail over a holiday weekend. The central issue in <u>Baker</u> was the sufficiency of and/or requirement to investigate whether the correct person was arrested. The Court in <u>Baker</u> held that

> "[w]e may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation."

<u>Id.</u> at 145.

The court in <u>Baker</u> held that law enforcement personnel do not have a constitutional duty to "investigate independently every claim of innocence," nor to "perform an error-free investigation of such a claim." <u>Id.</u> at 146. <u>Baker</u> has been used as a benchmark to determine if a mistaken detention is sufficiently lengthy to constitute a deprivation of liberty under the Due Process Clause. See <u>Johnson</u>, 711 F.Supp. at 1470 (six days sufficient to state a Due Process claim); <u>Patton</u>, 822 F. 2d at 700 (one week sufficient to state a Due Process claim); <u>Griffin</u>, 1999 WL 342400 at *7 (five days sufficient to stat a Due Process claim). However, courts have not

read <u>Baker</u> as "creating a bright-line rule regarding the length of detention".  <u>Alvarado v. Bratton</u>, 299 Fed.Appx. 740, 742 (9th Cir. 2008).  In fact, in <u>Lee v. City of Los Angeles</u>, 250 F. 3d 668, 679 (9th Cir. 2001), the court rejected the defendant's argument that the plaintiff's claim "must fail at the pleading stage because he was incarcerated for only one day before his extradition hearing."  <u>Id.</u> at 684.

The cases cited by Defendants to defeat the Plaintiff's claim are inapposite.  In <u>Afeworki v. Thompson</u>, 2007 WL 2572293 (W.D. Wash. 2007), the court concluded that a seventeen day delay between the arrest and first appearance did not shock the conscience and was not offensive to the concept of an ordered liberty.  The plaintiff in <u>Afeworki</u>, however, was detained on other charges pursuant to several outstanding warrants including an arrest warrant relating to a prior conviction.  <u>Id.</u> at *3.  The Plaintiff in the instant case had no other charges pending and there were no other outstanding warrants.

In <u>Pledger v. Reece</u>, 2005 W.L. 3783428 (W.D. Ark. 2005), the plaintiff was held for fourteen days before being released.  However, the court found that the situation resulting in the delay appeared to have been caused by negligence which cannot form the bases of a Due Process violation.  <u>Id.</u> at *4. The instant case involves more than negligence.  There was a deliberate indifference to Plaintiff's right to an first appearance within twenty four hours.  Upon being informed by the Plaintiff that she had not been taken to first appearance, she was told that she was not getting a first appearance and that her warrant prohibited her from bonding out of jail. [Amended Complaint, ¶ 11].  These allegations, which must be taken as true, show that the actions by the Defendants were willful and intentional.

In Hunt v. Elkhart County Sheriff, 95 F. Supp. 2d 930 (N.D. Ind. 2000), the plaintiff was only detained for 50 hours and unlike Florida, the state in which the plaintiff was detained did not impose a time requirement upon which a sheriff must act upon learning of a detention. Applying a Fourteenth Amendment Due Process analysis, the court held that the plaintiff was required to present facts to establish that the defendants "intentionally and recklessly" deprived him of a constitutional right under the totality of the circumstances, which the plaintiff failed to do in Hunt.  In contrast, in the instant case, the Plaintiff was told that she was not entitled to first appearance and that her warrant prohibited her from getting bond.  These statements directly contradict the plain wording of the warrant and support a finding of intentional and reckless conduct by the Defendants.

Green v. Sheahan, 1998 WL 901681 (N.D. Ill. 1998) is also distinguishable.  There, the plaintiff could not establish a Due Process violation because the court was unclear as to what the Plaintiff's allegations were.  The court dismissed the case giving the plaintiff leave to amend. 1998 WL at *4.  In Lara v. Stohry, 2005 WL 2886076 (S.D. Ind. 2005), the Due Process Clause was held not to protect the plaintiff who was being held in the defendant's jail on a warrant from another county.  Thus, the arresting agency had no authority or jurisdiction to initiate the first appearance.  Id. at *2.  London v. Dorney, 2009 WL 903392 (W.D. Ark. 2009) is also distinguishable in that the plaintiff was arrested on Friday April 6, 2007 which was Good Friday. Id. at *4 The next business day, Monday April 9, 2007, he was taken before a judge.  Id.  There was therefore no indication that "the delay in Plaintiff's first appearance was due to anything other than the timing of the holiday weekend."  In the instant case, there was no holiday delay. Also, in Green, the Arkansas Rules of Criminal Procedure only required that "[a]n arrested

12

person. . .shall be taken before a judicial officer without unnecessary delay." Id. Florida's rule requires first appearance within twenty four hours.

In Almeida v. Sheahan, 1998 W.L. 781109 (N.D. Ill. 1998), the court found there was no violation where the plaintiff was detained for two days after being arrested because of mistaken identity. As in Baker, the sheriff was under no duty to investigate his protestations of innocence. In Panfil v. City of Chicago, 2002 WL 2003724, *4 (7th Cir. 2002), the plaintiff's Due Process claims were denied because the plaintiff was brought before a magistrate two days after he was incarcerated and an investigation started thereafter that resulted in his release due to mistaken identity. In the instant case, there was no need to investigate anything. Defendants needed only to comply with Florida law and the Florida Rules of Criminal Procedure.

Rather than being akin to Baker, as the Defendants argue, the facts of the instant case are closer to those in Griffin v. Sheahan, supra and Johnson v. City of Chicago, supra, in which the courts found that five and six days, respectively, of prolonged unlawful incarceration was a sufficient lapse of time to implicate the Fourteenth Amendment. Sanchez was told that she was in jail on a warrant that did not allow a bond. She and her family members pleaded with the Defendants to allow her to have a first appearance before a court. During her detention, her husband missed a lucrative contract because he had to stay home with the parties children and Plaintiff had to sleep on a bed that hurt her due to a back injury. She missed her young child's birthday. Under these circumstances, Plaintiff has shown that the Defendants' conduct offended the standards of substantive due process and that the totality of the circumstances shocks the conscience. Defendants' Motion to Dismiss Counts I and II should be denied.

13

## V.  COUNTS III & IV: STATE LAW NEGLIGENT ENFORCEMENT OF POLICIES (SHAWNA SANCHEZ)

Plaintiff agrees that to have an actionable negligence claim against a government entity there must be a common law or statutory duty regarding the alleged negligent conduct.  See Hinckley v. Palm Beach County Bd. of Comm'rs, 801 So.2d 193, 194-98 (Fla. 4th DCA 2001); see also Defendant's Motion, pg. 13.  Plaintiff, however, disagrees with Defendants' argument that Plaintiff's negligent enforcement of policies claim is barred to the extent that the claim is premised upon a duty of care created by internal policies and procedures of the Defendants.

For that proposition, Defendants cite Pollock v. Florida Department of Highway Patrol, 882 So.2d 928 (Fla. 2004).  In Pollock, the Florida Supreme Court held that the internal policies of a governmental agency do not in and of themselves establish a legal duty.  Defendants correctly state the holding in Pollock but incorrectly attempt to apply that holding to the instant case.   Internal agency procedures do not in and of themselves create an independent duty but a duty is created when agency policies and procedures are established by statutory or common law.  Id. at 937.  The policies and procedures that the Defendants failed to enforce were established by §907.041 of the Florida Statutes.  Specifically, under §907.041(2), the Legislature determined that the procedures for pretrial release determinations would be governed by rules adopted by the Florida Supreme Court.  Rule 3.130, Fla.R.Crim.Proc., is one of those formally adopted rules.  This Rule requires that arrested persons in this state be taken before a judicial officer within 24 hours of arrest.  That Rule was violated in this case.

14

Defendants argue that Plaintiff does not allege a violation of or a failure to enforce any Florida Statute as a basis for the creation of the duty of care. A cursory reading of the Amended Complaint, however, belies this argument.

In paragraphs 42 and 47 of her Amended Complaint, Plaintiff specifically states that Defendants had a duty to provide Plaintiff with first appearance and advise her of her right to legal counsel by virtue of Art. I, §§ 9, 14, and 21 of the Florida Constitution, Rule 3.130 of the Florida Rules of Criminal Procedure, Section 907.041, Florida Statutes, the Leon and Gadsden County Jail Inmate Handbooks, and the Sixth and Fourteenth Amendments to the U.S. Constitution. In Paragraphs 43 and 48, Plaintiff further states that this duty arises from the fact that Plaintiff was in the custody of Defendants and that Defendants had the duty to ensure the timely transport of Plaintiff from the Leon County Jail to the Gadsden County Jail and/or that the Gadsden County Jail had an obligation to come get her from the Leon County Jail. She pled that this duty arose because of the special relationship between Defendants and Plaintiff due to the restraint on her liberty and/or because Plaintiff's unlawful detention was within a foreseeable zone of risk created when Plaintiff was detained by Defendants.

The initial question on Counts III and IV is whether the Defendants owed Plaintiff a duty of care. City of Pinellas Park v. Brown, 604 So. 2d 1222 (Fla. 1992); see also Lewis v. City of St. Petersburg, 260 F. 3d 1260 (11th Cir. 2001)("To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages."). The issue of duty is an question of law. McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992).

A duty of care has been established in circumstances like those presented *sub judice* when there is a "special relationship" existing between the individual and the governmental entity and/or the harm is within a "foreseeable zone of risk."  Both a special relationship and a foreseeable zone of risk have been proven here.

## A.  THE "SPECIAL RELATIONSHIP" TEST IS MET HERE

In Everton v. Willard, 468 So. 2d 936 (Fla. 1985), the court recognized that while a police officer engaged in making arrests and enforcing the law will not ordinarily owe a duty  of care to any particular member of the public, if a special relationship exists between an individual and a governmental entity engaged in a public function, there may be a duty of care owed to the individual.[4]  The existence of special relationships or public policy considerations have also given  rise to non-delegable duties. See Sammons v. Broward Bank, 599 So.2d 1018, 1020 (Fla. 4th DCA 1992); Hinckley, 801 So.2d at 196 (when the County undertook to provide transportation services to a developmentally disabled person, it created a special relationship with her and a duty to protect her from foreseeable harm which is non-delegable).

This test is met when there is a "special relationship" between the defendant and the plaintiff, such that the plaintiff is entitled to protection.  Liability has been found in custodial relationships:   Harris v. Monds, 696 So. 2d 446, 446 (Fla. 4th DCA 1997)(stating that a prisoner who sustains injuries while incarcerated was owed a common-law duty of reasonable care based on the nature of the custodial relationship); White v. Palm Beach County, 404 So. 2d 123 (Fla. 4th DCA 1981)(finding liability for violence and sexual abuse suffered by inmates in jail); see also

---

[4]        In Everton, the Florida Supreme Court recognized that "if a special relationship exists between an individual and a governmental entity, there could be a duty of care owed to the individual."  468 So. 2d at 938.

Henderson v. City of St. Petersburg, 247 So. 2d 23 (Fla. 2d DCA 1971)(finding liability for injury to police informant after police knew he was in danger for cooperating with authorities).

In Hartley v. Floyd, 512 So.2d 1022 (Fla. 1st DCA 1987), the sheriff was held to be liable when, at the request of a missing man's wife, a deputy agreed to do certain, specific tasks in an effort to locate the husband. The deputy did not perform any of the tasks as a consequence of which the husband died. The sheriff argued he could not be liable for a person's injuries unless he owed a special duty to a person beyond the general duty owed the public at large. The First District agreed that

> "... [w]hile this is a correct statement of law[,] it is not applicable to the facts in this case where[,] notwithstanding the absence of any preexisting special duty to Mrs. Floyd, the sheriff's office agreed to perform certain activities at her request. Once again, having assumed the undertaking[,] the sheriff's office had an obligation to carry it out with reasonable care. The sheriff's deputy negligently failed to perform the assumed responsibilities, and the sheriff can therefore be held liable for his negligence."

Id. at 1024.

Applying these legal principals to the instant case, the Defendants cannot avoid liability because they had a special relationship with Sanchez due to the fact that she was in their custody.

## B.  PLAINTIFF WAS WITHIN THE "FORESEEABLE ZONE OF RISK"

Sanchez was incarcerated within the Leon County Jail because one and/or both Defendants refused to follow the first appearance Rule.  "Clearly, the sheriff and his [employees] owed the [plaintiff] the duty to use reasonable care for his safety while he was incarcerated." Hutchinson v. Miller, 548 So. 2d 883 (Fla. 5th DCA 1989).  Under Kaisner v. Kolb, 543 So. 2d 732 (Fla. 1989), a duty of care was also owed to Sanchez because she was within the "foreseeable zone of risk".

17

In <u>Kaisner</u>, the Florida Supreme Court determined that a county could be liable to a motorist who was pulled over by sheriff's deputies and was injured when he was hit by traffic while standing on the side of the road.  The court conducted a two part analysis in determining the government's duty to the injured driver.  First, the court determined that the injured party was in custody[5] and recognized that historically, a government has been held responsible if a party in custody is injured as a result of governmental negligence.  Second, the court stated that "[w]here a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.  We see no reason why the same analysis should not obtain in a case in which the zone of risk is created by the police." <u>Id.</u> at 735 (citations omitted.)

Once Sanchez was restrained of her liberty, she was in the "foreseeable zone of risk" and, therefore, a duty of care was owed to her.  <u>Id.</u>; <u>see also</u> <u>Moore v. FWCC</u>, 861 S. 3d at 1253 (once the plaintiff was restrained of his liberty, he was in the "foreseeable zone of risk" described in <u>Kaisner</u>.  "Therefore a duty of care was owed to the appellant."); <u>Mosby v. Harrell</u>, 909 So. 2d 323, 327 (Fla. 1st DCA 2005)(discussing foreseeable zone of risk).  "[T]he trial and appellate

---

[5]        In <u>Kaisner</u>, the Court concluded that "custody" should not be narrowly construed:

"The term 'custody' is defined as the detainer of a man's person by virtue of lawful process or authority.  The term is very elastic and may mean actual imprisonment or *physical detention* or mere power, legal or physical, of imprisoning or of taking manual possession.  We thus conclude that 'custody' need not consist of the formal act of an arrest, but can include any detention."

<u>Id.</u> at 734 (emphasis in original; citation omitted).

courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant." McCain, 593 So.2d at 503.

After Kaisner, the Supreme Court addressed legal duty in a case involving a non-governmental defendant in McCain, 593 So. 2d 500.  In McCain, the court determined that a duty is owed to all persons who are within a foreseeable zone of risk created by the tortfeasor's alleged wrongdoing.

The foreseeable zone of risk test was subsequently embraced by the Florida Supreme Court again in City of Pinellas Park v. Brown, 604 So. 2d 1222 (Fla. 1992).  Utilizing the foreseeable zone of risk analysis of Kaisner and McCain, the court held that there was a duty to the innocent bystanders.  Id. at 1223, 1225-26, 1228; see also Henderson v. Bowden, 737 So.2d 532 (Fla.1999)(where a sheriff's deputy arrested a drunk driver and thereafter directed the driver's equally intoxicated passenger who was not in custody, to drive the vehicle to a nearby Circle K store to call his parents for a ride home, court imposed liability because the Sheriff's deputies had placed the passengers of the car in danger by directing an intoxicated person to drive, and that this direction, more likely than not, created a foreseeable zone of risk giving rise to a legal duty).

As the risk grows, so too does the duty, because the risk to be perceived defines the duty of care to be undertaken.  See Brown, 604 So.2d 1222.  The risk in the instant case was harm to Plaintiff by her incarceration without giving her first appearance and then telling her that her warrant did not allow a bond.

Significant damage to an arrestee is a foreseeable consequence of the inadequate training and policies described in Plaintiff's complaint.  As the court stated in Crislip v. Holland, 401 So.2d 1115 (Fla. 4th DCA 1981):

> In order for injuries to be a foreseeable consequence of a negligent act, it is not necessary that the initial tortfeasor be able to foresee the exact nature and extent of the injuries or the precise manner in which the injuries occur.  Rather, all that is necessary in order for liability to arise is that the tortfeasor be able to foresee that some injury will likely result in some manner as a consequence of his negligent acts. (citations omitted).

Id. at 1117; see also Leib v. City of Tampa, 326 So.2d 52 (Fla. 2d DCA 1976); Budet v. K-Mart

Corp. 491 So.2d 1248, 1251 (Fla. 2d DCA 1986).

A resulting harm need only be within the scope of danger created by the defendant's

negligent conduct to be reasonably foreseeable. Gibson v. Avis Rent-A-Car System, 386 So.2d

520 (Fla. 1980).  If within the scope of danger created by the Defendant, dismissal is improper

under the cases cited above.  Importantly, the question of foreseeability and whether an

intervening cause is foreseeable is for the trier of fact. Id.  "Only a total absence of evidence to

support an inference that the intervening cause was foreseeable justifies the court in removing the

question from the trier of fact." Overby v. Wille, 411 S. 2d 1331, 1332 (Fla. 4th DCA 1982).

In the instant case, Plaintiff has sufficiently pled violations of Rule 3.180, a duty to her

due to her incarceration and harm as a result thereof.  Despite the Defendant's argument to the

contrary [Defendant's Motion, pg. 14], a statute can serve as a basis of legal duty and a violation

of that statute is evidence of negligence.  See deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d

198 (Fla.1973)(holding that a violation of a statute, imposing upon a railroad a duty to protect

road traffic from colliding with unlighted trains blocking the highway at night at an unlighted

crossing, was negligence per se).

Defendants violated a formally enacted Rule promulgated by the Florida Supreme Court.

Courts have held that a violation of internal policy and procedure manuals or industry standards

is evidence of negligence.  See Marks v. Mandel, 477 So.2d 1036, 1039 (Fla. 3d DCA 1985)(trial

20

court erred in excluding from evidence hospital's emergency room policy and procedure manual as evidence of a general industry custom or evidence that the defendant violated its own policy or an industry standard); Clements v. Boca Aviation, Inc., 444 So.2d 597 (Fla. 4th DCA 1984); Dean Witter Reynolds, Inc v. Hammock, 489 So.2d 761, 767 (Fla. 1st DCA 1986)(evidence of violation of brokerage firm's in-house regulations was admissible as evidence of negligence); St. Louis-San Francisco Ry. Co. v. White, 369 So.2d 1007 (Fla. 1st DCA 1979)(violation of statute requiring placing of crossbucks at all crossings was evidence of negligence); see also deJesus v. Seaboard Coast Line R. Co., 281 So.2d at  201 (court ruled that a violation of any statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury is negligence per se).

In Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So. 2d 912 (Fla. 1985), the court explained that government officials and employees responsible for the "enforcement of laws and protection of the public safety" usually owe no duty of care to an individual member of the general public. Id. at 919-20.  The basis for this general proposition is that there has never been any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of persons.  Id. at 918.

Despite this general rule, the court in Trianon recognized that, under certain circumstances, a governmental entity engaged in law enforcement and public safety functions will owe a duty of care to a member of the public.  "Specifically, if there is an underlying common law or statutory duty of care with respect to the alleged negligent conduct, a governmental entity engaged in law enforcement and public safety functions will be charged with a duty of care."

21

_____ Pollock also states that "[a] special tort duty does arise when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by . . .taking persons into police custody [and/or] detaining them. Pollock. at 935.  Because Plaintiff was in the custody of the Defendants, she was placed in a zone of risk and a special relationship was created.  On that basis, Plaintiff has sufficiently alleged the existence of a special duty of care and Defendants can not avoid liability.  See Vaden v. Campbell, 2009 WL 1919474, *3 (N.D. Fla. 2009)._____

## VI.  COUNTS V & VI: STATE LAW FALSE IMPRISONMENT (SHAWNA SANCHEZ)

Plaintiff's five day detention resulting from Defendant's delay in providing her first appearance constitutes false imprisonment under Florida law.  "False imprisonment is detention without color of legal authority and occurs when 'there is an improper restraint which is not the result of a judicial proceeding."  Card v. Miami Dade County, Florida 147 F. Supp. 2d 1334, 1347 (S.D. Fla. 2001) (quoting Jackson v. Navarro, 665 So.2d 340, 341, 342 (Fla. 4th DCA 1995); see also Johnson v. Weiner, 155 Fla. 169, 171, 19 So.2d 699 (1944)(identifying the elements of false imprisonment under Florida law as "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty").  Plaintiff has sufficiently pled that she was detained without legal authority and improperly restrained by the Defendants.

Plaintiff was admittedly arrested pursuant to a facially valid warrant which is not fatal to her false imprisonment claim.  Here, the issue is not whether the arrest warrant was valid but whether there was a false imprisonment after the warrant had been served.  The arrest warrant specifically stated that bond was to be set at first appearance.  The fact that Plaintiff never

received a first appearance was essentially a denial of bond and in direct contravention of the warrant.

In <u>Johnson v. Heinrich</u>, 543 So.2d 831, 832 (Fla.2d DCA 1989), the plaintiff was held pursuant to an outstanding warrant issued in Ohio. The state of Ohio informed the authorities holding the plaintiff that he should be released. <u>Id.</u> Despite this information, the authorities held the plaintiff for a day and a half after being informed that he should be released. <u>Id.</u> The plaintiff thereafter sued for false imprisonment against the defendant sheriff. The court held that the continued detention of one and a half days raised a question of fact that could not be decided on summary judgment. <u>Id.</u> at 833. Material issues of fact existed as to the reasonableness of the length of the arrestee's detention or imprisonment after the defendant was advised he could be released. <u>Id.</u>

Like <u>Johnson</u>, Plaintiff has pled that the Defendants in the instant case unreasonably held her without bond pursuant to a warrant that actually permitted her to bond out of jail. She was improperly detained after it was known or should have been known that she may be entitled to release. <u>See</u> <u>Lee v. Dugger</u>, 902 F.2d 822, 824, n.3 (11th Cir. 1990) (Tjoflat, J., concurring)(noting the plaintiff "may well have a state tort claim for false imprisonment" where he alleged he was kept in prison past the expiration of his sentence); <u>see also</u> <u>Douthit v. Jones</u>, 619 F.2d 527, 532 (5th cir. 1980)(stating "[d]etention of a prisoner beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process").

Defendants also argue that "[w]hile complying with a facially valid court order the law enforcement officer enforcing the order is entitled to immunity." [Defendant's Motion, pg. 15]. The problem in the instant case is that although the Defendants complied in arresting Plaintiff pursuant

to a facially valid warrant, they failed to comply with the directives of the warrant regarding giving

her a first appearance during which bond would be set.  The warrant clearly stated that bond was to

be set at first appearance.  This was not a "no bond" warrant, despite the representations by the

Defendants to the contrary.  Defendants may be entitled to immunity for Plaintiff's arrest, but they

are not immune from liability for her continued detention in violation of the specific directive in the

warrant that bond would be set at first appearance.

Defendants also violated Rule 3.130(a), Fla.R.Crim.Proc by failing to take Plaintiff before

a judicial officer within 24 hours of arrest.  The mandate of this Rule is clear- the arrestee "shall"

be brought before a judicial officer within this 24 hour period.  The Defendants failure to comply

with this directive made Plaintiff's continued detention without a first appearance an improper

restraint without color of legal authority.

Accepting the allegations in Plaintiff's Amended Complaint as true, particularly paragraph

11, Plaintiff has sufficiently plead a claim for false imprisonment.  See Hutchinson v. City of St.

Petersburg, 2005 WL 1944410, *2 (M.D. Fla. 2005)(accepting as true plaintiff's allegations in claim

for false arrest at motion to dismiss stage).

## VII.  CONSORTIUM CLAIM (COUNT VII) (OLEGARIO SANCHEZ)

Defendants correctly state that the dismissal of the underlying state law claims of Plaintiff

Shawna Sanchez necessarily results in the dismissal of the loss of consortium claims of Olegario

Sanchez.

## VIII.  SUPPLEMENTAL JURISDICTION (STATE LAW CLAIMS)

If the Court dismisses Plaintiff's federal claims, it still should, in its discretion, continue

to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims.  Even though

24

no basis for original federal court jurisdiction would exist, the court may still hear the state law

claims.  See 28 U.S.C. § 1367©; Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County,

Fla., 402 F.3d 1092, 1123 (11th Cir. 2005); Rowe v. City of Fort Lauderdale, 279 F.3d 1271,

1288 (11th Cir. 2002).  The court should consider issues such as judicial economy, fairness,

comity, and convenience in making this decision.  Lewis v. City of St. Petersburg, 260 F.3d

1260, 1267 (11th Cir. 2001).

Under the principles of fairness and convenience, foremost, the court should exercise its

discretion and continue to hear the state law claims of this case, regardless of the status of the

federal claims.

Respectfully submitted,


/s/  Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
310 East Bradford Road
Tallahassee, FL 32303
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by
CM/ECF this 28th day of December, 2009 to all counsel of record.


/s/  Marie A. Mattox
Marie A. Mattox